IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. 11-21 Erie |
| | ) | Criminal No. 06-10 Erie |
| | ) | Chief Judge Sean J. McLaughlin |
| v. | ) | |
| | ) | |
| ROBERT EARL NOBLE, | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

McLAUGHLIN, SEAN J., Chief Judge

This matter is before the Court upon Defendant Robert Earl Noble's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. [Dkt. 81]. Also before the Court is a motion styled a "Motion to Amend" in which Defendant essentially seeks leave to supply additional facts and argument in support of his Section 2255 motion. [Dkt. 87]. In his motions, Defendant contends that both trial and appellate counsel were ineffective and that the Assistant United States Attorney engaged in prosecutorial misconduct. The government responds that Defendant's motion is untimely, procedurally barred, meritless, and that Defendant has waived his right to file a motion collaterally attacking his sentence. For the reasons which follow, Defendant's motion is denied.

## I. BACKGROUND

On February 15, 2006, a federal grand jury returned an indictment charging Defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count One), and making counterfeit obligations or securities, in violation of 18 U.S.C. § 471 (Count Two). On July 31, 2007, Defendant pleaded guilty to Count One pursuant to a written plea agreement. Following a sentencing hearing on December 17, 2007, this Court sentenced Defendant to 96 months imprisonment and three years of supervised release.

Prior to entering his plea agreement, Defendant had filed a motion to suppress evidence gathered by Pennsylvania State Parole agents during a search of his house, arguing that the search and his subsequent arrest were not supported by reasonable suspicion. The events leading up to the search were summarized by the Third Circuit as follows:

> In 2001, Noble was paroled after having been convicted and sentenced for conspiracy to commit theft by unlawful taking and simple assault.
>
>      \*     \*     \*     \*     \*     \*     \*     \*     \*
>
> Noble gave authorities cause to believe that he had violated conditions of his parole prior to his arrest on October 18, 2005. 2005. In February of 2005, he was issued a written warning for for failing to notify his parole officer, Agent Divell, of a change in in his employment status and for failing to attend a drug and alcohol counseling session. In March of 2005, he was issued another written warning after having traveled out of state without permission and having been cited by the state police for

for operating a motor vehicle without a license. On October 17, 2005, Noble's ex-girlfriend contacted Divell and advised him that she had seen Noble at his residence with a handgun, a cell phone, and illegal drugs. She also informed Divell that Noble had stolen her car and that she had seen him driving. The same day, Divell and another parole officer conducted surveillance at Noble's house. During the surveillance they witnessed Noble get into a car, but, when he saw the parole officers, he got out of the car and went back inside the house. Finally, Divell confirmed with the local police department that Noble had been issued two traffic citations for driving without a license.

On October 18, 2005, Agent Divell and accompanying state police officers went to Noble's residence to arrest him for parole violations. Noble's girlfriend let them in, and Divell and the officers saw Noble sitting on a couch with two cell phones on a coffee table in front of him. Divell arrested Noble for violating his parole by driving without a license and by possessing cell phones. In plain view, another parole officer spotted counterfeit money in a trash can in the living room. Then Divell and another parole officer began to search the home for evidence of additional parole violations, and Divell found a handgun in a shoebox under Noble's bed. After discovering the gun, Divell obtained a search warrant and, with the assistance of federal agents and local police, searched the remainder of the home, finding marijuana packets and more evidence of counterfeiting.

United States v. Noble, 326 Fed. Appx. 125, 126-27 (3rd Cir. 2009). This Court denied Defendant's motion to suppress on July 26, 2007. As a condition of his plea agreement, Defendant preserved his right to appeal the denial of the motion to suppress. On appeal, the Third Circuit affirmed, concluding that Defendant's arrest and the search of his home were each supported by both reasonable

suspicion and probable cause.  See Noble, 326 Fed. Appx. at 128.  On October 13, 13, 2009, the United States Supreme Court denied Defendant's Petition for Writ of of Certiorari.

At some point during the spring of 2010, Petitioner obtained a 28 U.S.C. § 2255 application from the Clerk of Courts and began to research and draft his Section 2255 motion.  On October 4, 2010, nine days before the expiration of the one-year statutory limitations period set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Defendant was transferred without notice from his cell at the United States Penitentiary-Canaan to the Federal Transfer Center in Oklahoma City, Oklahoma.  On or about November 1, 2010, Defendant was transferred from FTC-Oklahoma to the United States Penitentiary in Atlanta, Georgia.  On or about November 16, 2010, Defendant was transferred from USP-Atlanta to his final destination at the United States Penitentiary-Lee in Jonesville, Virginia.

During these transfers, Defendant's possessions, including his "nearly completed" Section 2255 motion and legal materials, were removed from him and packed separately for transfer.  See Letter from Defendant, 11/1/10 [Dkt. 79].  As a As a result, on October 13, 2010, the last day on which Defendant could have filed a filed a timely Section 2255 motion, Defendant sent a letter to the Clerk of Courts requesting an extension of time.  Id.  On October 21, 2010, the Clerk of Courts

responded by sending Defendant a new 28 U.S.C. § 2255 application.  Id.  On November 1, 2010, Defendant wrote a second letter to the Clerk of Courts clarifying that he was requesting an extension of time, rather than a fresh application form.  Id.  On November 3, 2010, this Court entered an order granting Defendant's request for an extension of time and indicating that he would have until February 3, 2011 to file his motion.  See Order Granting Motion for Extension of Time, 11/03/2010.  Immediately thereafter, the Court entered a second order vacating the previous order and a third order directing the government to respond to Petitioner's request for an extension of time.  See Order Vacating Order Granting Motion for Extension of Time, 11/03/2010, and Order to Respond, 11/03/2010.  Defendant received all three orders simultaneously on December 6, 2010.  See Defendant's Reply Brief, p. 23.  On December 17, 2010, Defendant's personal property, including his legal materials and Section 2255 motion, were returned to him at USP-Lee following his transfer.

On January 24, 2011, Defendant filed the instant Section 2255 Motion.  [Dkt. 81].  The government responded on February 25, 2011, and Defendant filed reply briefs on March 29, 2011 [Dkt. 86] and April 5, 2012 [Dkt. 87].  This matter is ripe for review.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. When a motion is made pursuant to 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3rd Cir. 1992). Further, the court must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the petitioner is not entitled to relief. Id.

Here, upon consideration of Defendant's petition, the government's response thereto, and the pleadings and documents of record, I conclude that no hearing is warranted because Defendant's claims can be entirely resolved based upon the current record.

# III. DISCUSSION

In his motion to vacate, Defendant primarily contends that his trial counsel was ineffective in failing to present defense witnesses or otherwise effectively impeach the government's witnesses. He further asserts that his appellate counsel was ineffective in failing to persuade the Third Circuit Court of Appeals to overturn this Court's ruling on the suppression motion. Defendant also contends that the prosecutor acted in bad faith during the suppression hearing by presenting perjured testimony and withholding exculpatory evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Finally, Defendant contends that this Court erred during his Rule 11 colloquy by failing to adequately explain the impact of the appellate waiver provisions contained in his plea agreement.

In response, the government contends that Defendant's is untimely, that he has waived his right to file any collateral attack motions, and that each of the claims he is attempting to raise are procedurally barred and lack merit. Each of these arguments will be addressed in turn.

## A. Timeliness

A motion for collateral relief pursuant to Section 2255 is subject to the one-one-year limitations period set forth in the AEDPA. <u>Kapral v. United States</u>, 166 F.3d 565, 567 (3rd Cir. 1999). As a general matter, the limitations period begins to

to run on "the date on which the judgment of conviction becomes final." 28 U.S.C. §
U.S.C. § 2255(f)(1). In the instant case, the parties agree that Defendant's
conviction became final within the meaning of the statute on October 13, 2009, when
when the United States Supreme Court denied Defendant's Petition for Writ of
Certiorari. Because Defendant did not file his Section 2255 motion until January 24,
24, 2011, over three months after the expiration of the statutory limitations period,
the government contends that Defendant's motion is time-barred.

In response, Defendant contends that he is entitled to equitable tolling of the
limitations period. It is well-settled that the AEDPA limitation period may be
equitably tolled in appropriate circumstances. See Miller v. New Jersey State Dept.
of Corrections, 145 F.3d 615, 619 (3rd Cir. 1998). However, courts "should do so
'only when the principles of equity would make the rigid application of a limitations
period unfair.'" Sistrunk v. Rozum, 674 F.3d 181, 190 (3rd Cir. 2012) (quoting Miller,
145 F.3d at 617). As such, equitable tolling is generally appropriate only where: (1)
"the petitioner has 'in some extraordinary way . . . been prevented from asserting his
or her rights,'" and (2) "he or she exercised reasonable diligence in investigating and
bringing the claims." Miller, 145 F.3d at 618-19 (quoting Oshiver v. Levin, Fishbein,
Sedran & Berman, 38 F.3d 1380, 1380 (3rd Cir. 1994)).


In the instant case, Defendant contends that the one-year limitation period

should be tolled in light of his unannounced prison transfer and the accompanying accompanying confiscation of his legal materials mere days prior to the expiration of of the statutory period. A similar situation was presented in <u>Robinson v. Johnson</u>, <u>Johnson</u>, 313 F.3d 128, 142-43 (3rd Cir. 2002). In <u>Robinson</u>, the petitioner's personal belongings, including his legal papers, were taken from him during the course of a transfer to a different unit at his correctional institution less than five weeks before the expiration of the statute of limitations for his Section 2255 motion. motion. <u>Id</u>. at 142. Robinson eventually filed a grievance, over two months after the after the limitations period had passed, seeking the return of his legal papers. <u>Id</u>. He He ultimately filed his Section 2255 motion almost one year after the limitations period had expired. <u>Id</u>. After the district court dismissed Robinson's petition on limitations grounds, Robinson appealed, arguing that the limitations period should have been equitably tolled for the period of time during which his legal papers had had been confiscated. <u>Id</u>. at 133.

The Third Circuit began its analysis by noting that, as a general matter, "deprivation of legal material for a relatively brief time period is not sufficient to warrant tolling." <u>Robinson</u>, 313 F.3d at 142-43. This is particularly true when the the deprivation occurs "early in the limitations period when there is adequate time to to correct the problem." <u>Id</u>. at 143 (citing <u>Allen v. Lewis</u>, 255 F.3d 798, 801 (9th Cir. Cir. 2001) (denial of access to legal materials for one month near beginning of

statutory period did not warrant equitable tolling); <u>Fisher v. Johnson</u>, 174 F.3d 710 710 (5th Cir. 1999) (equitable tolling not warranted where prisoner's access to legal legal materials was restricted for 17 days early in the limitations period)).  In <u>Allen</u>, <u>Allen</u>, for example, the petitioner was deprived of his legal materials for 27 days during a prison transfer which occurred only one month after his conviction had been been finalized.  <u>Id</u>. at 801.  The Ninth Circuit held that this brief delay was insufficient insufficient to demonstrate "extraordinary circumstances" because "if the prisoner is is diligently pursuing his habeas petition, the one-year limitations period will ordinarily give him ample opportunity to overcome such early obstacles."  <u>Id</u>. Similarly, in <u>Fisher</u>, the Fifth Circuit declined to equitably toll a petitioner's Section 2255 motion on the basis of a 17-day period of confinement which occurred approximately six months into the petitioner's limitations period because the petitioner "still had over six months to complete his federal habeas petition" after he he was restored to the general population.  <u>Fisher</u>, 174 F.3d at 801.

On the other hand, courts have occasionally found "extraordinary circumstances" in support of equitable tolling when a petitioner's legal materials are are confiscated shortly before the filing deadline.  In <u>Valvarde v. Stinson</u>, 224 F.3d F.3d 129 (2nd Cir. 2000), for example, the petitioner argued that his habeas petition petition was untimely only because corrections officers had confiscated his legal papers, including his hand-drafted habeas petition, shortly before the filing deadline.

deadline. <u>Id</u>. at 132-33. The Second Circuit agreed, concluding that this last-minute confiscation was sufficiently "extraordinary" to warrant an evidentiary hearing and noting that "[a] petitioner should not be faulted . . . for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period." <u>Id</u>. at 136; <u>see</u> <u>also</u> <u>Green v. Stickman</u>, 2004 WL 2536834, *3-5 (E.D. Pa. 2004) (equitable tolling warranted where petitioner's "nearly completed" habeas petition was confiscated shortly before the limitations deadline and where petitioner had been diligently attempting to exercise his habeas rights prior to confiscation).

After analyzing at length the holdings in <u>Allen</u>, <u>Fisher</u> and <u>Valvarde</u>, the Third Circuit ultimately determined that Robinson was not entitled to equitable tolling:

> The facts of this case do not present a basis for equitable tolling. Robinson was only deprived of his legal papers for a few weeks of the year-long statute of limitations . . . [and] has not shown that he exercised adequate diligence in attempting to file a timely petition. Although he did informally request return of his papers after his August 19, 1997 transfer, the grievance filed in December 1997, after the expiration of his federal limitations period, stated that he needed the documents for his [unrelated] state court filings. While he ultimately received a copy of his old habeas petition, he filed his [current] petition without the benefit of his removed legal papers, suggesting, if not demonstrating, that they were not necessary to his federal filing.

11

Id. at 142.  The Court made clear, however, that the determining factor was Robinson's lack of diligence in pursuing his habeas rights:

> [I]n Allen and Fisher the petitioners were deprived of their materials early in the limitations period when there was adequate time to correct the problem. Robinson's deprivation occurred at the very end of the limitations period. His case more closely resembles that in Valverde where the papers were confiscated at the end of the limitations period. But Robinson still has not demonstrated the diligence necessary to warrant an evidentiary hearing on his claim. For example, Robinson does not claim that he was working on the habeas petition before his papers were removed, although there was adequate time to have done so. Summarizing, he had the majority of the limitations period to work on his petition, filed his formal grievance long after the limitations period expired, ultimately filed his petition without the benefit of the removed papers, and did not seek to file a timely petition and then clarify it once he had access to his materials as 28 U.S.C. § 2242 and Fed.R.Civ.P. 15(a) would allow. Robinson has not alleged facts sufficient to show that "sound legal principles as well as the interests of justice" demand pursuit of the "sparing" doctrine of equitable tolling.

Id. at 143 (internal citations omitted).

In the instant case, nearly every factor which the Court found lacking in Robinson is present on this record.  Here, for instance, Defendant obtained the necessary papers from the Clerk of Courts to begin working on his habeas motion during the spring of 2010, over half a year before the deadline, and began working working on his petition immediately.  See Petitioner's Reply, p. 14 [Dkt. 86] (noting (noting that Defendant had begun researching and drafting his motion on or before

before July 3, 2010); Motion to Amend, p. 8 [Dkt. 87]. At the time that his legal papers were confiscated, a mere nine days before the filing deadline, Defendant's petition was nearing completion. Id; see also Green, 2004 WL 2536834, *4 (distinguishing Robinson on the basis that Green's petition was "substantially complete" when his papers were confiscated shortly before the deadline). Moreover, Moreover, Defendant's awareness of the deadline and of the importance of filing in a in a timely manner is reflected by the letters which he sent to the Clerk's office almost immediately after his papers were confiscated seeking an extension of the statutory period. See Letter from Defendant, 11/1/10 [Dkt. 79]; Petitioner's Reply, p. Reply, p. 18 [Dkt. 86]; Green, 2004 WL 2536834, *4. Upon eventually regaining his his legal papers, Defendant utilized them to complete his petition and file it as quickly quickly as possible. Green, 2004 WL 2536834, *4 (noting that, unlike in Robinson, Robinson, the petitioner "ultimately relied on the recovered papers in completing his his petition, giving rise to an inference not supported in Robinson that the papers were, in fact, essential to the timely completion and filing of the petition."). In sum, sum, we conclude that Defendant has carried his burden of demonstrating that extraordinary circumstances prevented him from filing on time and that he exercised exercised reasonable diligence in trying to overcome those obstacles. With the benefit of equitable tolling, Defendant's Section 2255 motion is timely.

**B.      Waiver**

The government next contends that Defendant's Section 2255 motion must be dismissed because Defendant waived the right to file any motion collaterally attacking his sentence as part of his plea agreement.  It is well-settled that an appellate and habeas corpus waiver provision in a plea agreement must be enforced, if entered into voluntarily and knowingly, unless to do so would work "a miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558 (3rd Cir. 2001). Thus, in order to determine whether a waiver is valid, the court must "specifically examine the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237 (3rd Cir. 2008).  The defendant has the initial "burden of presenting an argument that would render his waiver unknowing or involuntary," but the district court has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Mabry, 536 F.3d at 237 (citing Khattak, 273 F.3d at 563).


In the instant case, Defendant's plea agreement contained the following waiver provision:

> ROBERT EARL NOBLE waives the right to take a direct appeal

appeal from his conviction or sentence under 28 U.S.C. §1291 §1291 or 18 U.S.C. §3742, subject to the following exceptions: exceptions:

> (a) If the United States appeals from the sentence, ROBERT EARL NOBLE may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, ROBERT EARL NOBLE may take a direct appeal from the sentence.
>
> (c) As a condition of his guilty plea, ROBERT EARL NOBLE may take a direct appeal from his conviction limited to the following issue: the denial of his motion to suppress evidence. If ROBERT EARL NOBLE takes a direct appeal raising this issue and prevails in the appeal, he may withdraw his plea of guilty. If he does not take a direct appeal or does not prevail in the appeal, the plea of guilty shall stand.

The foregoing reservations of the right to appeal on the basis of specified issues do not include the right to raise issues other than those specified.

ROBERT EARL NOBLE further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(Plea Agreement, ¶ A(6)).

During his plea colloquy, Defendant indicated that he was 29 years old, had

graduated from high school, was able to effectively communicate using the English

language, and understood the nature of the proceedings taking place. (Plea Transcript, 7/31/07, pp. 3-4). During the colloquy, the prosecutor outlined the critical provisions of the plea agreement on the record, including the following description of the appellate waiver provisions contained therein:

> The defendant waives his right to take a direct appeal from his conviction or sentence subject to the following exceptions. If the United States appeals from his sentence, the defendant may take a direct appeal from his sentence. If the sentence exceeds the applicable statutory limits set forth in the United States Code, or the sentence unreasonably exceeds the guideline range determined by the court, the defendant may take a direct appeal from the sentence. The defendant may take a direct appeal from his conviction limited to the following issue, the denial of his motion to suppress evidence.

> The defendant further waives the right to file a motion to vacate sentence under 28 U.S.C. Section 2255, and to file any other collateral proceeding attacking his conviction or sentence.

Id. at 12. Following the prosecutor's summary of the appellate waiver, Defendant Defendant acknowledged having read and discussed the plea agreement with his counsel prior to the colloquy. Id. at 13. Defendant also acknowledged that he had had signed the plea agreement and that, by so doing, he had attested that he understood and agreed to the terms therein. Id. at 13-14. Shortly thereafter, however, the Court asked Defendant whether he "[understood] that under certain circumstances you or the government may have the right to appeal any sentence

that I impose?"  Id. at 15.  Defendant indicated that he understood, and no further

further elaboration or discussion of those circumstances took place.  Id.

Defendant primarily argues that his appellate and collateral attack waiver was

unknowing and involuntary because the prosecution, rather than the Court,

explained the terms and conditions of the waiver during the colloquy.  In United

States v. Goodson, the Third Circuit held that Rule 11(b)(1)(N) requires the

sentencing judge to personally explain the terms of any appellate waiver to a

defendant during the colloquy.  Goodson, 544 F.3d 529 (3rd Cir. 2008).  In Goodson,

as in the instant case, the sentencing judge had "relied upon the prosecutor's

recitation of the terms of the appellate waiver to fulfill its obligation to inform the

defendant of the specifics of the waiver provision."  Id. at 540.  The Third Circuit held

that this practice, although widespread at the time, violated Rule 11(b)(1)(N) and

constituted error.  Id. See also United States v. Ishkhanian, 351 Fed. Appx. 741,

744-45 (3rd Cir. 2009) (same); Jackson v. United States, 2008 WL 5429695, *12

(W.D. Pa. 2008) ("[U]nder Goodson, the failure to directly question Petitioner as to

collateral attack and appellate waivers in the plea agreement under Rule 11(b)(1)(N)

is plain and obvious error.").

This conclusion, however, is not the end of the Court's inquiry.  As noted in

Goodson, where a defendant "has not objected in the trial court to a Rule 11 error,"

the defendant "has the burden of satisfying the plain error standard."  Goodson, 544

F.3d at 539. Plain error "requires that there must be (1) error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights." Id. (citing Johnson v. United States, 520 U.S. 461, 467 (1997)). "If all three conditions are met, [a court] may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting Johnson, 520 U.S. at 467).

In the instant case, the first two elements of the plain error test are satisfied by the Court's failure to directly explain the waiver provision to Defendant during the plea colloquy. Goodson, 544 F.3d at 540; Ishkhanian, 351 Fed. Appx. at 744-45. Defendant must next demonstrate that this error affected his "substantial rights." The Third Circuit has delineated the following list of factors which are relevant to this inquiry: "(1) the characteristics of the defendant, (2) the nature and circumstances of the crimes committed; (3) the terms of the plea agreement itself; (4) the execution of the agreement which contained a clause that he read and understood the plea agreement which contained the waiver; (5) the defendant's assertions during the plea hearing that he had read, understood and conferred with his counsel regarding the terms of the plea agreement; and (6) that the prosecutor had generally reviewed the terms of the appellate waiver." Jackson, 2008 WL 5429695 at *13 (citing Goodson, 544 F.3d at 540-41).

In Goodson, for example, the Court noted that the defendant "was college

educated," had "successfully perpetrated wire fraud and the uttering of counterfeit checks," and "was able to read the plea letter and to comprehend the meaning of its its provisions." Goodson, 544 F.3d at 540-41. The Court further noted that the prosecutor had "generally discussed the terms of the appellate waiver, and that Goodson advised the Court that he understood that his right to appeal was substantially limited." Id. Taking into account the "whole record," including each of of the findings described above, the Third Circuit enforced the waiver, concluding that the defendant had "failed to meet his burden of proving that the deficient Rule Rule 11 colloquy precluded him from understanding that he had a right to appeal and and that he had substantially agreed to give up that right." Id. at 541.

In United States v. Ishkhanian, the Third Circuit conducted a similar review of the record before concluding that a district court's technical violation of Rule 11 did not invalidate a plea waiver provision:

> In the present case, Ishkhanian has not shown a reasonable probability that the District Court's Rule 11 error prevented him him from understanding the effect and breadth of his appellate appellate waiver. Ishkhanian has a tenth grade education and is is fluent in the English language. He reviewed the entire plea agreement with his counsel prior to the guilty plea hearing, and and he executed an attached acknowledgment of rights, which which indicated that the agreement contained an appellate waiver. He informed the Court at the outset of the change-of-change-of-plea hearing that he understood the contents of his his plea agreement. During the hearing, the prosecutor explained the waiver, which covered all rights on direct appeal appeal and collateral attack regardless of the statutory source

> source from which they arose. Later in the same hearing, the Court mentioned the waiver a second time, asking whether the the prosecutor had covered Ishkhanian's appellate rights. The The prosecutor responded in the affirmative. The Court then asked both counsel whether the Court had overlooked any essential terms of the agreement, and both responded that they they were prepared for imposition of a sentence. Lastly, the Court asked Ishkhanian whether he "ha[d] any questions of the the Court as to what [he was] doing today?" Ishkhanian responded: "No, sir." He did not request clarification about the the waiver or any other provision of the plea agreement.
>
> In total, Ishkhanian was informed of the waiver on at least four separate occasions: once when reviewing the plea agreement with counsel, once when executing the acknowledgment attached thereto, and twice during his change-of-plea hearing. Under these circumstances, we cannot conclude that the District Court's technically inadequate Rule 11 colloquy impaired Ishkhanian's ability to understand the effect and scope of the waiver.

Ishkhanian, 351 Fed. Appx. at 745-56 (citing Goodson, 544 F.3d at 541). Characterizing the district court's failure to question the defendant directly about the waiver as "a relatively minor error," the Third Circuit enforced the waiver and dismissed the appeal. Id. at 747.

Similarly, in United States v. McKoy, the Third Circuit again relied upon Goodson to enforce a defendant's waiver of his right to collaterally attack his sentence pursuant to Section 2255. In so doing, the Court noted that the defendant defendant "was a 23-year-old with a tenth grade education; that he could read, write, write, and understand English; that the Court, with defense counsel's agreement,

found him competent; that the prosecutor discussed the terms of the appellate waiver during the change-of-plea hearing; that McKoy stated to the Court that he understood that he was giving up his right to appeal, to file a motion to vacate sentence, and to seek collateral review of his sentence; and that McKoy had executed the acknowledgement on the final page of his plea agreement and reviewed the agreement with his counsel and understood the terms and contents." contents." McKoy, 350 Fed. Appx. 732, 735-36 (3rd Cir. 2009); see also, e.g., Jackson, 2008 WL 5429695, *12-13 (enforcing an appellate waiver despite technical technical violations of Rule 11 after finding that the defendant was "thirty-eight years years old, high school educated," "could read, write and understand the English language," and that the collateral attack waivers in the plea agreement and the prosecutor's description thereof at the colloquy were sufficiently clear to render defendant's plea agreement voluntary and knowing).

Applying the relevant factors set forth in the cases above, I note that Defendant was 29 years old at the time of his plea, had graduated from high school school with a diploma, and is able to read, write and understand English fluently. As As in Goodson, Ishkhanian and McKoy, the contents of the appellate and collateral collateral attack waivers were clearly set forth in the written plea agreement which Defendant signed and executed after discussing the contents with his counsel. In In open court during the plea colloquy, the prosecutor cogently summarized and

explained the import of the appellate waiver provision.  Subsequently, in response to response to questioning from the Court, Defendant indicated several times on the record that he understood those provisions and voluntarily and knowingly agreed to to their terms.  The record reflects that Defendant was informed of the waiver on at at least three separate occasions: once during his discussion of the plea agreement agreement with his counsel, a second time when executing the plea agreement, and and once more during the course of the plea colloquy.  At no time did Defendant request clarification or indicate that he did not understand the nature of his decision decision to waive his appellate rights as part of the plea agreement.  Moreover, when Defendant subsequently filed his direct appeal, he raised only the suppression suppression issue that he had explicitly retained in his plea agreement, implicitly demonstrating his understanding of the breadth and scope of his waiver.  Based on on the foregoing, the Court concludes that any error which occurred during the plea plea colloquy as a result of the technical violation of Rule 11(b)(1)(N) did not impair impair Defendant's ability to understand the scope and effect of the waiver provision. provision.  As such, the error did not affect his substantial rights and the waiver provision is enforceable.

Nonetheless, although we have concluded that Defendant's collateral attack attack waiver is enforceable, the Court will, in an abundance of caution, briefly address the underlying merits of Defendant's petition in order to ensure the fairness,

fairness, integrity, and public reputation of the judicial proceedings surrounding Defendant's guilty plea.

### C.    Merits

The claims set forth in Defendant's Section 2255 motion fall generally into two categories: allegations attacking this Court's ruling on Defendant's motion to suppress (through the framework of allegations of ineffective assistance of counsel), and allegations of prosecutorial misconduct.  With respect to the first category, Defendant contends that his trial counsel ineffectively investigated and presented the motion to suppress, failed to present defense witnesses, and failed to impeach the government's witnesses.  With respect to the second category, Defendant asserts that the prosecution acted in bad faith during the suppression hearing by presenting perjured testimony and withholding exculpatory evidence.  Finally, Defendant contends that his appellate counsel was ineffective in failing to overturn this Court's ruling on the suppression motion on appeal or to raise his prosecutorial misconduct claims.

### 1.    Ineffective Assistance of Counsel/Motion to Suppress

In order to demonstrate ineffective assistance of counsel, Defendant must satisfy the Supreme Court's two-pronged test as set forth in Strickland v.

Washington, 466 U.S. 668 (1984). This test requires him to demonstrate (i) that defense counsel's performance fell "below an objective standard of reasonableness," thus rendering the assistance so deficient that the attorney did not not function as "counsel" as the Sixth Amendment guarantees, see id. at 687-88, and (ii) that counsel's ineffectiveness prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the the proceeding would have been different." See id. at 694. See also Flamer v. State State of Delaware, 68 F.3d 710, 727-28 (3rd Cir. 1995). A "reasonable probability" is probability" is a probability "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Here, Defendant contends that trial counsel's performance with respect to the presentation of his motion to suppress was deficient in several respects. First, Defendant contends that trial counsel erroneously argued that Defendant's arrest had to be supported by reasonable suspicion, rather than probable cause. See Memorandum of Law in Support of § 2255 Motion, pp. 71-76 [Dkt. 82] (hereinafter, "Memorandum in Support"). However, the Third Circuit addressed and rejected this precise argument on direct appeal, concluding that, under either standard, the arresting officers had sufficient cause to arrest Defendant:

> [I]t is unclear whether a parole officer must have probable cause to arrest a parolee for parole violations, or whether a less less demanding standard applies. We need not answer that

question here, however, because the arresting officers clearly had probable cause to arrest Noble.

> \*     \*     \*     \*     \*     \*     \*     \*     \*

> Because the arresting officers had probable cause, it is also unnecessary for us to address Noble's argument that the District Court committed plain error by applying the reasonable suspicion rather than probable cause standard to its Fourth Amendment analysis of the arrest.

Noble, 326 Fed. Appx. at 127, 127 n. 5. Consequently, even if trial counsel's application of a reasonable suspicion standard could be characterized as erroneous, the Third Circuit's conclusion that Defendant's arrest was supported by sufficient cause under either standard preempts any possibility that the "result of the proceeding would have been different" if not for the alleged error. See Strickland, 466 U.S. at 694.

Defendant next contends that trial counsel's performance was deficient in that he failed to properly impeach the government's witnesses at the suppression hearing and failed to present defense witnesses to contradict the government's testimony. See Memorandum in Support, pp. 77-89. With respect to this claim, Defendant argues that the testimony provided by government witnesses at his suppression hearing contradicted the sworn statements contained in the search warrant affidavit:

> Both government witnesses, critical to the government's case, case, had testified that one of the parole agents, Gerald Varga, Varga, and an unnamed Erie police officer, whose name is

25

> found to be Officer Brown, immediately upon entry of the
> petitioner's residence and simultaneously discovered the
> currency inside the trash can.  However, opposed to both
> agents' testimonies . . ., the Erie Police Dept. search warrant
> affidavit . . . states [that] "While 'STANDING BY' EPD officer W.
> W. Brown observed in plain view in a garbage can in the living
> living room . . ."

See Memorandum in Support, p. 79.  Defendant contends that the search warrant
affidavit contradicts the government's testimony by listing only Officer Brown as the
discoverer of the currency, and by stating that Officer Brown was "standing by" the
trash can when he discovered the currency (as opposed to having just walked in the
door).  Id. at 79-80.  Defendant argues that these alleged contradictions, "if used by
a competent counsel exercising sound professional judgment, would have
devastated the government's case."  Id. at 80.


Even if the statements attacked by Defendant could be somehow construed
construed as contradictory, trial counsel's decision not to pursue a line of
questioning based on those statements had no impact on the outcome of the
proceeding.  As the Third Circuit noted on appeal, parole officers had already been
been alerted to several parole violations by a reliable tip from Defendant's girlfriend
girlfriend prior to entering his house, providing them in advance with "reasonable
suspicion that Noble was violating his parole and that evidence of the violations

would be in Noble's house." Noble, 326 Fed. Appx. at 128. Simply put, the alleged alleged contradictions as to minor details of how the currency was discovered have have no bearing as to the ultimate determination that the underlying search was constitutional.

## 2. Prosecutorial Misconduct/Brady

Defendant next contends that the prosecution acted in bad faith during the suppression hearing by presenting perjured testimony and withholding exculpatory exculpatory evidence. See Memorandum in Support, pp. 90-101; 161-191. These These claims all arise from an incident which occurred during the testimony of Agent Agent David Divell of the Pennsylvania State Parole Board at Defendant's suppression hearing. During Agent Divell's testimony, he referenced several exhibits, including a supervision history report, each of which was entered into evidence. (Transcript, Motion to Suppress, Government's Response, Ex. 3, App. 114, 142-44). In addition to his testimony concerning the incidents which were summarized in the supervision history report, Agent Divell provided testimony concerning his meeting with Defendant's ex-girlfriend, the source of the tip that lead lead to Defendant's arrest. Id. at 144. On cross-examination, defense counsel asked Agent Divell whether he took any notes during his meeting with Defendant's Defendant's ex-girlfriend, and Agent Divell indicated that he had. Defense counsel

counsel requested to see those notes, and a recess was taken so that he could examine them before continuing cross-examination.  Id.  Defendant contends that that this incident – the failure to have provided in advance the notes from Agent Divell's meeting with his ex-girlfriend – rises to the level of prosecutorial misconduct misconduct and a Brady violation.

The government's discovery obligations in criminal proceedings stem from several sources.  First, with respect to witness statements and rough notes generated from witness interviews, Rule 16(a)(2) of the Federal Rules of Criminal Procedure generally exempts from disclosure "reports, memoranda, or other internal internal government documents made by . . . any other government agent investigating or prosecuting the case," as well as "statements made by government government witnesses or prospective government witnesses."  Fed. R. Crim. P. 16(a)(2).  Notwithstanding Rule 16, the Jencks Act, 18 U.S.C. § 3500, requires that that certain statements or reports generated by prospective witnesses must be delivered to the defense "after a witness . . . has testified on direct examination."  18 18 U.S.C. § 3500(b).  Finally, the government is required to turn over to the defense defense any evidence that is "favorable to an accused" provided that "the evidence evidence is material either to guilt or to punishment, irrespective of the good faith or or bad faith of the prosecution."  Brady, 373 U.S. at 87.  To state a valid Brady claim, claim, "a plaintiff must show that the evidence was (1) suppressed, (2) favorable,

and (3) material to the defense." Riley v. Taylor, 277 F.3d 261, 301 (3rd Cir. 2001) 2001) (citing United States v. Perdomo, 929 F.2d 967, 970 (3rd Cir.1991)).

Here, Defendant has failed to demonstrate that the government committed prosecutorial misconduct or violated any of their discovery obligations.[1] Rough interview notes which were not explicitly "signed or otherwise adopted" by the prospective witness are not covered by the Jencks Act. See 18 U.S.C. § 3500; United States v. Ramos, 27 F.3d 65 (1994). Moreover, to the extent that the Jencks Jencks Act could be deemed applicable, the record reflects that Agent Divell's notes notes were turned over to defense counsel immediately following his testimony on on direct examination, precisely as required by 18 U.S.C. § 3500. (See Transcript, Transcript, Motion to Suppress, Government's Response, Ex. 3, App. 147-50). Finally, Defendant cannot state a Brady claim because he has failed to demonstrate demonstrate that the notes were suppressed, that they were exculpatory, or that they were material to his defense. As the record reflects, the precise evidence that

---

1    As noted by the government, Defendant's allegations of prosecutorial misconduct are also procedurally defaulted. It is axiomatic that a claim which is not raised on direct review is procedurally barred and cannot be raised on collateral review without a showing of either actual innocence, or of "cause" for the failure to raise the claim and "actual prejudice" from the alleged error. See, e.g., Murray v. Carrier, 477 U.S. 478, 490-92 (1986). Even if Defendant's allegations of ineffective assistance of appellate counsel were sufficient to provide "cause" for his failure to raise these claims on direct review, he still must demonstrate that the alleged errors actually prejudiced him by "work[ing] to his actual and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982). Given that his prosecutorial misconduct claims are meritless, Defendant cannot meet this high standard to excuse his procedural default.

that Defendant contends was improperly withheld by the government was utilized by

by trial counsel in an adept, albeit unsuccessful attempt to impeach Agent Divell's

testimony. Accordingly, Defendant's allegations of prosecutorial misconduct and bad

bad faith are without merit.

### 3.    Ineffective Assistance of Appellate Counsel

Finally, with respect to each of the arguments set forth above, Defendant

contends that appellate counsel's performance was deficient in failing to successfully

raise each of those arguments on direct appeal.  However, it is well established that

appellate counsel does not act ineffectively by failing to raise meritless arguments.

See, e.g., United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999) ("There can

be no Sixth Amendment deprivation of effective counsel based on an attorney's

failure to raise a meritless argument."); United States v. Jackson, 2010 WL 1688543,

*8 (E.D. Pa. 2010 ("Under Strickland, Jackson's appellate counsel cannot be

ineffective for failing to raise a meritless issue on appeal."); see also Strickland, 466

U.S. at 691 (failure of counsel to pursue fruitless claims "may not later be challenged

as unreasonable").  Given the Court's conclusion that each of Defendant's claims

lacks merit, appellate counsel did not render ineffective assistance by failing to raise

them on appeal.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that: (1) Defendant's Section 2255 motion, given the benefit of equitable tolling, is timely; (2) Defendant has knowingly and voluntarily waived his right to collaterally attack his sentence through the instant Section 2255 motion; and, alternatively, (3) the Court finds, for the reasons discussed herein, that Defendant's substantive claims lack merit. Accordingly, Defendant's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          )
                                   )      Civil No. 11-21 Erie
                                   )      Criminal No. 06-10 Erie
          vi.                      )      Chief Judge Sean J. McLaughlin
                                   )
ROBERT EARL NOBLE,                 )
                                   )
                                   )

**ORDER**

AND NOW, this 8th day of July, 2013, for the reasons set forth above, it is hereby ORDERED that Defendant's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is DENIED. Defendant's Motion to Amend and Defendant's Motion for Adjudication are each denied as moot.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c), Petitioner has not made a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability.

/s/ - Sean J. McLaughlin
Chief United States District Judge

cm:   All parties of record.